**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| QUINTON FELTNER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**3M COMPANY'S COMPLAINT FOR ENFORCEMENT OF THE PARTIES'**
**SETTLEMENT AGREEMENT**

In October 2020, 3M file a motion for preliminary injunction against Quinton Feltner, who left his employment as a high-level sales executive with 3M to work for 3M's competitor, Nuance Communications, Inc. In that action, titled *Feltner v. 3M*, 4:20-cv-01525-AGF ("Underlying Action"), 3M sought to enjoin Feltner from further violating his employment agreement with 3M ("Employment Agreement") through his employment with Nuance and from using any 3M confidential and proprietary information, including customer contacts and e-mails on his iPhone, that 3M believed he retained after his departure. (Underlying Action, Dkts. 7, 11, and 12.)

Before 3M's motion for preliminary injunction was decided, the Parties reached a settlement pursuant to which Feltner consented to entry of a permanent injunction enjoining him from violating his Employment Agreement ("Settlement Agreement"). Feltner also agreed to a "Deletion Protocol" pursuant to which he is required to provide 3M with a third-party vendor report evidencing that 3M's confidential and proprietary information is ***permanently*** deleted from his iPhone. Feltner has not only failed to provide 3M with the requisite third-party vendor report,

but affirmatively refuses to do so. Nor has Feltner provided an attestation that 3M's data was permanently deleted.

The Deletion Protocol is a material contractual term without which 3M would not have entered the Settlement Agreement; indeed, Feltner's retention and use of 3M's data in his role at Nuance would allow Feltner and Nuance to unfairly compete with 3M and cause it irreparable harm. 3M therefore brings this action to enforce the Settlement Agreement and compel Feltner to provide 3M with the report and attestation to which it is entitled under the Agreement.

## PARTIES

1.     3M develops innovative solutions that improve efficiency and safety for consumers and individuals across a number of industries, including the healthcare industry. 3M's healthcare business sells artificial intelligence ("AI") systems, including conversational AI technology.

2.     Feltner began working at 3M in 2019 after 3M acquired his former employer. In October 2020, Feltner accepted employment with Nuance, 3M's primary competitor in the conversational AI space.

## JURISDICTION

3.     3M is a Delaware corporation with its principal place of business in St. Paul, Minnesota. 3M employed Feltner to conduct business on 3M's behalf out of the state of Missouri.

4.     Feltner is a resident of Missouri and Arizona. (*See* Underlying Action, Dkt. 27 at ¶ 5.)

5.     This Court further has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000. The value of Feltner's obligations under the Settlement Agreement, and particularly with regard to the Deletion Protocol, is immeasurable. The Deletion Protocol was negotiated to ensure that Feltner

was dispossessed of all the 3M proprietary and competitively sensitive information he retained after resigning from 3M. As set forth more fully in 3M's motion for preliminary injunction, that information is invaluable to a competitor like Nuance, and the resulting harm that 3M would suffer from Feltner and Nuance's use of that information to unfairly complete with 3M is irreparable. (*See e.g.* Underlying Action, Dkt. 12 at 13-14.) Accordingly, the amount in controversy unquestionably exceeds $75,000.

6.      This Court has personal jurisdiction over Feltner because he expressly consented to the jurisdiction of this Court in the Venue clause of the Settlement Agreement (a true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1, ¶ 13) and because he is a resident of Missouri.

## BACKGROUND

**The Settlement Agreement**

7.       The Parties and Nuance reached a settlement in the Underlying Action on December 3, 2020 after a lengthy mediation with Frank Neuner.

8.      Over the next several weeks, the Parties and Nuance extensively negotiated the terms of the Settlement Agreement and fully executed the Agreement on January 4, 2021. (*See* Ex. 1.)

9.      Under the Settlement Agreement, Feltner and Nuance consented to the entry of a permanent injunction ("Consent Injunction") (Ex. 1, ¶3; *id*. at Ex. A), pursuant to which Feltner is prohibited from

       a.   having any involvement with any Nuance Product that competes with 3M (Dkt. 37, ¶ 1);

       b.   soliciting any 3M Customer, which "is defined to mean any healthcare system,

entity, or provider who is currently under contract to use a 3M Product" (*Id*. at ¶ 2);

    c.   using "any 3M Confidential Information in his roles at Nuance" (*Id*. at ¶ 3).

10.    The Consent Injunction was entered by the Honorable Audrey G. Fleissig on January 5, 2021. (Underlying Action, Dkt. 37.)

11.    Pursuant to the Settlement Agreement, Feltner and Nuance also agreed to a Deletion Protocol. (Ex. 1, ¶ 5.)

> *Deletion Protocol*: Within 10 business days of signing this Settlement Agreement, Feltner's third-party vendor will examine his personal cellphone used while employed at 3M and delete any 3M Customer (as defined above but also to include any 3M accounts assigned to Feltner's territory or portfolio since March 2019 ("3M Customer Portfolio")) contact information and any 3M business emails and/or texts. Thereafter, ***the third-party vendor will provide a report of what was deleted***, and ***Feltner will provide a written attestation that all 3M Customer and 3M Customer Portfolio contact information and 3M business emails and/or texts have been permanently deleted from the phone will be provided to the Parties.***

(*Id*.)

**Feltner Refuses To Provide 3M With The Requisite Third-Party Vendor Report And Assurances That 3M's Data Was Permanently Deleted**

12.    On January 16, 2021, 3M's counsel contacted counsel for Feltner and Nuance requesting the vendor report and attestation from Feltner.

13.    Feltner's counsel responded on January 21, 2021 that he would "coordinate with our vendor [*sic*] the compliance documentation."

14.    On February 16, 2021, after 3M's counsel sent an additional request, Feltner's counsel forwarded a letter from Feltner's third-party vendor, TERIS (the "TERIS Letter"), which stated:

- TERIS was instructed to perform a complete forensic collection of custodian Quinton Feltner's cellphone (Serial#:C39VV42YJCLF) on 11/23/2020.

- TERIS provided Mr. Feltner a report of the phone's Contacts, Emails, Instant/Text Messages (SMS/MMS), and Chats for identification of 3M materials on 2/2/2021.

- Mr. Feltner identified 108 contacts, all emails, all text/instant messages (SMS/MMS), and 20 Instagram Message Threads (located within Chats) for deletion from his phone.

- TERIS took possession of the phone and performed deletion of these items on 2/9/2021.

(A true and correct copy of the TERIS Letter is attached hereto as Exhibit 2.) Feltner claims that this letter constitutes a "report of what was deleted."

15.     The TERIS Letter fails to identify, however, what data was deleted and whether it was permanently deleted (i.e. deleted from the cloud as opposed to deleted from local storage on his iPhone).

16.     3M's counsel notified Feltner's counsel on February 17, 2021 that the TERIS Letter did not comply with the Settlement Agreement and requested a third-party vendor report detailing the data that was deleted and Feltner's attestation.

17.     On February 19, 2021, Feltner's counsel forwarded 3M's counsel via e-mail a declaration from Feltner that "basically mirrors" the barebones TERIS Letter. Like the TERIS Letter, the declaration fails to attest that 3M's data was permanently deleted or identify what data was deleted. (A true and correct copy of Feltner's declaration is attached as Exhibit 3.)

18.     In his February 19, 2021 e-mail, Feltner's counsel ignored 3M's request for the third-party vendor report required under the Settlement Agreement, but forwarded an e-mail chain with TERIS that reveals:

    a.  Feltner did not provide his phone to TERIS until after January 25, 2021, "way past the 10 day deadline" under the Settlement Agreement.

    b.  TERIS subsequently provided Feltner a "phone report" (via e-mail and in hard

copy) that identified the "Contacts, Emails, Chats, and Instant Messages" data accessible on Feltner's phone. TERIS asked Feltner to highlight "in yellow" any data on the report that should be deleted so that its "forensic examiner will be able to use that to complete/document the deletion process."

c.  Feltner notified TERIS that he reviewed "ALL THE DATA" (emphasis in original) and highlighted the contacts that can be deleted. He also confirmed that the chats, emails, and instant message on the "phone report" can be deleted.

d.  On February 5, 2021, Feltner's counsel asked TERIS "how [it] was logging the disposed data" because "[w]e need to provide a report that sets forth with some degree of specificity the data that was removed."

19.     Counsel's communications with TERIS evidence the Parties' agreement that Feltner would provide the detailed information to 3M that Feltner now refuses to hand over.

20.     Indeed, Feltner not only failed to provide 3M with a report setting forth with specificity the data that was deleted, but now refuses to even provide the phone report on which Feltner highlighted the 3M data he believed should be deleted.

21.     The generic summary found in the TERIS Letter does not satisfy the Settlement Agreement; Feltner's counsel acknowledged as much in his February 5, 2021 e-mail to TERIS.

22.     Over the next several months, 3M's counsel requested the third-party vendor report on multiple occasions, but Feltner ignored 3M's requests.

23.     Feltner's continued refusal to provide the third-party vendor report and assurances required under the Settlement Agreement has caused 3M significant concern that he has retained access to 3M's confidential and proprietary information and will unlawfully use that information in his role at Nuance.

24.     Accordingly, on May 14, 2021, 3M's counsel sent Feltner's counsel a final email requesting the vendor report and Feltner's assurances that he did not retain access to 3M's confidential and proprietary information.

> I am following up on my several requests going back to January of this year for the vendor report identifying the 3M data that was deleted from Feltner's phone. The settlement agreement expressly requires that: "the third-party vendor will provide a report of what was deleted." The letter you provided (attached) does not satisfy this requirement.
>
> Rather, the letter states only that Feltner identified the 3M data located on his phone, which included "108 contacts, all emails, all text/instant messages (SMS/MMS), and 20 Instagram Message Threads," and that the vendor deleted the same. The letter plainly does not tell us what 3M data was deleted or the scope of the deletion, e.g. whether the vendor delete the data from any cloud that backs up Feltner's phone. 3M has a right to know what data was deleted so that it can determine that all 3M data it believed to be in Feltner's possession was in fact deleted.
>
> At minimum, 3M is entitled to know the 3M Customer and 3M Customer Portfolio contact information that was deleted and to receive assurances that Feltner did not retain that information in any cloud such that he can restore 3M's data on his phone. Please advise if you will provide this information and assurances pursuant to the Settlement Agreement or if we will need to raise this issue with the Court.

25.     Feltner's counsel responded on May 24, 2021 that Feltner had complied with the Settlement Agreement because the TERIS Letter and Feltner's declaration state that 3M's data had been "removed from his personal phone."

26.     Feltner did not provide, however, any assurances that the data was ***permanently*** deleted (as required by the Settlement Agreement) such that it cannot be restored to Feltner's phone or other electronic devices. Feltner also did not provide 3M with the "phone report," which 3M requested so that it could ensure "that all 3M data it believed to be in Feltner's possession was in fact deleted."

27.     Feltner's refusal to provide 3M with the vendor report and assurances that 3M's data was permanently deleted is a material breach of the Settlement Agreement.

## COUNT I
### (Breach of Contract)

28.     The Settlement Agreement, and any amendment(s) or supplement(s) to the same, constitute a valid and enforceable contract between 3M and Feltner.

29.     3M performed its respective obligations under the Settlement Agreement and/or is excused from performance as a result of Feltner's prior material breach.

30.     As detailed above, Feltner has breached, and failed to perform his obligations under, the Settlement Agreement by

   a.   refusing to provide a vendor report detailing what 3M data was deleted from his iPhone;

   b.   refusing to attest that the data was permanently deleted such that Feltner cannot restore the data to his phone or other electronic device; and,

   c.   upon information and belief, by retaining proprietary customer information.

31.      3M's proprietary and confidential customer information, strategies, pricing, revenue, and sales leads are invaluable and in the hands of Feltner and Nuance, it's primary competitor, 3M will suffer irreparable harm. 3M negotiated the Deletion Protocol specifically to protect itself against this irreparable harm. Without the Deletion Protocol 3M would not have agreed to the Settlement Agreement.

32.     Accordingly, 3M is entitled to specific performance of the Settlement Agreement requiring Feltner to provide a vendor report identifying what 3M data was deleted and how it was deleted (i.e. permanently such that it cannot be restored from the cloud or other medium).  3M is also entitled to specific performance requiring Feltner to provide a declaration stating that 3M's information was permanently deleted.

## REQUEST FOR RELIEF

WHEREFORE, 3M prays that the Court:

A.      Enforce the Settlement Agreement;

B.      Compel Feltner to provide 3M with a report from his third-party vendor identifying the 3M data that was deleted from his iPhone and how it was deleted;

C.      Compel Feltner to provide 3M with an attestation that 3M's data was permanently deleted such that it cannot be restored to his phone or other device via a cloud or other device or medium;

D.      Grant 3M such further and other relief as the Court deems just and equitable.

June 21, 2021                                  Respectfully submitted,

                                              ARMSTRONG TEASDALE LLP

                                              By: */s/ Jeffrey L. Schultz*

                                                   Jeffrey L. Schultz #56553
                                                   7700 Forsyth Blvd., Suite 1800
                                                   St. Louis, Missouri 63105
                                                   314.621.5070
                                                   314.621.5065 (facsimile)
                                                   jschultz@atllp.com

                                                   FAEGRE DRINKER BIDDLE & REATH LLP
                                                   Kerry L. Bundy
                                                   Kate E. Middleton
                                                   2200 Wells Fargo Center
                                                   90 S 7th Street
                                                   Minneapolis, Minnesota 55402
                                                   Telephone: (612) 766-7505
                                                   Facsimile: (612) 766-1600
                                                   kerry.bundy@faegredrinker.com
                                                   kate.middleton@faegredrinker.com


                                                   *ATTORNEYS FOR 3M COMPANY*